GUARANTY BANK & TRUST CO. v. BEAU-
MONT CADILLAC CO. et al.
(No. 444.)

(Court of Civil Appeals of Texas. Beaumont.
Feb. 6, 1920. Rehearing Denied
Feb. 18, 1920.)

1. PARTNERSHIP ⬦⟾55—EVIDENCE INSUFFI-
CIENT TO SHOW EXISTENCE.

In suit on notes signed "Beaumont Cadillac
Company, per H. D. Ellis, Manager," *held*, that
court properly found that said company defend-
ant was a branch of defendant corporation and
not a partnership composed of said Ellis and
two others.

2. PARTNERSHIP ⬦⟾56 — ESTOPPEL NOT
SHOWN.

Evidence *held* not to show existence of a
partnership by estoppel.

3. CORPORATIONS ⬦⟾426(12) — CORPORATION
DID NOT RATIFY UNAUTHORIZED NOTES OF
BRANCH MANAGER BY RECEIVING THE MONEY
WITHOUT KNOWLEDGE OF NOTES.

Where a manager of branch office of corpo-
ration, who had no authority to sign notes or
borrow money for the branch business, by
means of notes signed in the business name of
the branch obtained money sufficient to cover
in part shortages and paid said money to the
corporation, the corporation which in good faith
received the money without notice of the man-
ager's wrongful act is not liable to the payee.

4. CORPORATIONS ⬦⟾432(12)—BRANCH OFFICE
MANAGER HAD NO AUTHORITY TO BORROW
MONEY ON NOTES.

Facts *held* insufficient to show apparent au-
thority of branch office manager to borrow
money on notes signed in business name of
branch.

5. ESTOPPEL ⬦⟾96—NEGLIGENCE CANNOT BE
MADE BASIS WHERE PLAINTIFF WAS NOT MIS-
LED TO HIS INJURY.

Negligence of defendant corporation in fail-
ing to properly audit the books of its branch,
no matter how obvious, must have misled plain-
tiff to its injury in order to be the basis of an
estoppel.

6. PRINCIPAL AND AGENT ⬦⟾99—APPARENT
AUTHORITY OR ESTOPPEL MUST BE BASED
ON FACTS KNOWN TO PARTY DEALING WITH
AGENT.

Where actual authority does not exist, ap-
parent authority or estoppel cannot be estab-
lished except by facts known to the party deal-
ing with the agent and relied upon by him in
such dealings.

Appeal from District Court, Jefferson
County; W. H. Davidson, Judge.

Action by the Guaranty Bank & Trust
Company against the Beaumont Cadillac
Company and others. From the judgment
rendered, plaintiff appeals; the Houston Mo-
tor Car Company by cross-assignment com-
plaining of judgment against it. Affirmed in
part, and in part reversed and remanded.

Jno. M. Conley, of Beaumont, for appel-
lant.

Orgain, Butler, Bolinger & Carroll, of
Beaumont, for appellees.

WALKER, J. This suit was brought in
the Fifty-Eighth district court of Jefferson
county, Tex., by Guaranty Bank & Trust
Company of Beaumont, Tex., as plaintiff,
against Beaumont Cadillac Company, alleg-
ed to be a partnership composed of C. F.
Gydeson, E. T. Barden, and H. D. Ellis, and
against the persons named individually, and
also against the Houston Motor Car Com-
pany, a corporation having its domicile in
Houston, Harris county, Tex. The suit was
based upon five promissory notes, as follows,
to wit:

A note for $300, dated November 15, 1916,
due 90 days after date; a second note for
$450, bearing date December 1, 1916, due 60
days after date; a third note for $245, dated
December 21, 1916, due 30 days after date;
a fourth note for $500, bearing date January
8, 1917, due 90 days after date; and a fifth
note for $500, bearing date January 18, 1917,
due 60 days after date—each of these notes
bearing interest at the rate of 10 per cent.
per annum after maturity, and providing for
the usual 10 per cent. attorney's fees. All
of said notes were payable to Guaranty Bank
& Trust Company of Beaumont, Tex., and
signed Beaumont Cadillac Company, per H.
D. Ellis, Manager.

The court tried this case without a jury,
and on motion of appellee, defendant below,
filed conclusions of law and fact.

Some time prior to 1915, the Houston Mo-
tor Car Company, a Texas corporation domi-
ciled in Houston, Harris county, Tex., es-
tablished in Beaumont, Jefferson county,
Tex., a branch establishment under the busi-
ness name of Beaumont Cadillac Company.
The funds and stock of the Beaumont Cadil-
lac Company were furnished by the Houston
Motor Car Company. The manager or the
Beaumont Cadillac Company was employed
by the Houston Motor Car Company. All
other employés of this branch establishment
were employed and discharged by the man-
ager of the Beaumont Cadillac Company at
his pleasure. All of the employés of this
branch establishment were paid from the
funds of this branch establishment. George
De Witt, a prior manager of this branch es-
tablishment, was relieved of his duties on
or about January 15, 1915, and was succeed-
ed by H. D. Ellis. For several years prior
thereto, Ellis had been a trusted employé
of the Houston Motor Car Company in Hous-
ton, and the officers, agents, and employés
of this corporation retained this confidence
in him until January 15 or 20, 1917, at which
time it was discovered that Ellis was short
in his accounts in the sum of about $4,500.

⬦⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

When this discovery was made, the Houston Motor Car Company at once discharged him and instituted against him criminal proceedings. In managing this branch establishment, Ellis had authority to buy in Beaumont such incidental supplies as he needed, and had authority from the Houston Motor Car Company to sell cars on time. He also had authority to collect all notes, bills, and accounts due the Houston Motor Car Company; but he was without authority to sign notes or to borrow money for said business in any manner or under any conditions, and likewise he was without authority to sign the company's name to any negotiable paper.

The following additional facts were relied upon by appellant to establish Ellis' authority to execute the notes sued on in this case:

(1) In 1915, Ellis went to the appellant bank with E. T. Barden and introduced him to Mr. Nees, cashier of said bank, saying, "Mr. Barden of Beaumont Cadillac Company" or "our company." Mr. Barden, on this occasion, discussed the Beaumont Cadillac Company's prospects with Mr. Nees, and remarked that "they were getting along nicely and hoped to get a good business established in Beaumont." Mr. Barden, being in the electrical business, further said to Mr. Nees, "We are doing business with you people and would like to have a chance to sell you your fixtures."

(2) With the knowledge and consent of the Houston Motor Car Company, Ellis opened an account for the Beaumont Cadillac Company in plaintiff's bank, and conducted his banking business through this bank.

(3) Beginning about May 1, 1915, and continuously up until he was discharged in January, 1917, Ellis, without protest on the part of the defendants E. T. Barden, C. F. Gydeson, or Houston Motor Car Company (but without their knowledge or consent and and without their authority), drew checks on the funds of the Beaumont Cadillac Company deposited in plaintiff's bank, signed Beaumont Cadillac Company, by H. D. Ellis, Manager, to pay his personal accounts; the total amount of these checks, entirely exclusive of his salary, aggregating $3,897.05. Ellis also drew checks to cash," amounting to $758.88, and to himself in the amount of $779.22. He drew all of these checks exclusive of his salary.

(4) The passbook of the Beaumont Cadillac Company contained all the deposits of every kind and character made by H. D. Ellis, including the proceeds of the notes sued on in this case, and also the proceeds of a prior note originally made on the 15th of December, 1915. (This note was renewed from time to time, and, as renewed, was reduced by partial payments, until finally paid in full.) When some of the deposits were made, deposit slips were issued to the Beaumont Cadillac Company. Some of these deposit slips show on their face that they were issued to cover the proceeds of the notes sued on. This deposit book and these deposit slips were with the papers of the Beaumont Cadillac Company and were on file in its office.

(5) This passbook was balanced every month. This balance showed total deposits so much; checks returned so much. Each month when the book was balanced, all canceled checks were returned to the Beaumont Cadillac Company.

(6) Every 60 or 90 days during all the time Ellis was manager of the Beaumont Cadillac Company, appellee sent an auditor from Houston to audit the books and accounts of the Beaumont Cadillac Company, and to check the stock. All books and papers of the Beaumont Cadillac Company were subject to his inspection, and a careful audit by him would have given him knowledge of all transactions had by H. D. Ellis for the Beaumont Cadillac Company, including the issuance of checks in payment of his personal accounts and checks issued in favor of himself and for cash, and of the execution by him of all the notes sued on in this case. This auditor did not audit all the books and papers of appellee. He never examined the passbook nor the deposit slips nor the check book nor the canceled checks. It was his custom to notify Ellis one or two or three days in advance of his arrival.

(7) Ellis was given the title of manager by the Houston Motor Car Company. He was actively in charge of the business of the Beaumont Cadillac Company, and was held out as the one in control and authority. Large assignments of cars were shipped to him, and he in turn sold and delivered the cars, collected the proceeds of the sales, deposited proceeds of such sales to the credit of the Beaumont Cadillac Company in plaintiff's bank, drew drafts thereon, paid salaries of employés and paid out of said funds accounts contracted at various supply houses in Beaumont, made large remittances to E. T. Barden, individually, from funds deposited in the name of Beaumont Cadillac Company, and to Barden Electric Company, and to the Houston Motor Car Company, and handled the financial affairs of said company, in so far as plaintiff knew or was advised, without restriction or hindrance.

(8) On October 9, 1916, Ellis, as manager of the Beaumont Cadillac Company, sold Mr. Nees a King car, partly on time, without referring the sale to the Houston Motor Car Company for confirmation. (However, Ellis had discussed this prospective sale with Barden, and had his authority to make the sale.) The car was immediately delivered to Mr. Nees, and he drove it away. Mr. Nees had no actual knowledge in this or any other transaction involving the sale of cars by the

Beaumont Cadillac Company of Ellis' restricted authority.

(9) In June, 1916, Milton Guiterman purchased a car from the Beaumont Cadillac Company, through H. D. Ellis. Guiterman was then vice president and director in plaintiff's bank, and chairman of the financial board. The trade was made entirely with Ellis, and Ellis did not advise or tell him that such terms would first have to be submitted to the Houston Motor Car Company before the trade became binding, and he had no knowledge of any other person having anything to do with the transaction. At this time Ellis told Guiterman that, while he then only had a salary with the company, he was interested in the profits of the company, and he expected to build up a nice business and do very well.

(10) The note which Nees executed in part payment for the King car was taken to the American National Bank by Ellis, and he there, in the name of Beaumont Cadillac Company, borrowed $1,000 thereon, executed the note of Beaumont Cadillac Company therefor, and signed the name of Beaumont Cadillac Company, H. D. Ellis, Manager, and attached thereto as collateral security, the said note of Mr. Nees. None of the defendants knew anything of this transaction until after Ellis' defalcation. On this point E. T. Barden testified:

"My knowledge of the transaction of Ellis in making a note at the American National Bank for $1,000 attaching as collateral the note of T. H. Nees, payable to the Beaumont Cadillac Company, came to me after we learned of Mr. Ellis' defalcation. I did not know at the time he had done this, nor did I authorize him to so do. Ellis' authority in reference to such note was simply to retain it until it became due and then collect it, place the proceeds in the bank, and remit to me."

(11) The court's thirteenth finding of fact is as follows:

"On December 4, 1916, E. T. Barden, who was president and active head of Houston Motor Car Company, and of Federal Truck Sales Company (both of which were corporations), employed H. D. Ellis on a commission of 5 per cent. of proceeds to sell a truck for the Federal Truck Sales Company.

"Ellis, on December 4, 1916, made this sale, the said E. T. Barden permitting the same on condition that Ellis could sell a note for $900 given by the purchaser of the truck.

"Ellis took the note payable to Beaumont Cadillac Company (instead of to Federal Motor Sales Company), sold the note to plaintiff on December 6, 1916, indorsing thereon the name of Beaumont Cadillac Company, by himself as manager, deposited the proceeds in plaintiff bank in the name of Beaumont Cadillac Company, which was also shown by deposit slip and bank book, and sent E. T. Barden a check therefor, drawn on plaintiff bank, signed 'Beaumont Cadillac Company, by H. D. Ellis, Manager.' This check was received, accepted, and used

by E. T. Barden, and he knew that Ellis had made this transaction in the name of Beaumont Cadillac Company.

"E. T. Barden made no protest, either individually, or as head or president of Federal Truck Sales Company, or of Houston Motor Car Company, as to the manner Ellis had handled this transaction; nor did he advise plaintiff bank that Ellis had improperly handled the same or that it was not a Beaumont Cadillac transaction, or that Ellis had no authority to dispose of notes for Beaumont Cadillac Company and obtain money thereon. Plaintiff bank made no inquiry or investigation as to Ellis' authority to make the sale of this note, but did not know it was not a Beaumont Cadillac Company transaction, and thought it was as it appeared to be."

(12) On September 29, 1916, plaintiff inquired of Ellis the status and character of the Beaumont Cadillac Company, and in reply thereto Ellis gave plaintiff a written statement, to the effect that the Beaumont Cadillac Company was a partnership composed of E. T. Barden, C. F. Gydeson, and himself. The bank accepted said statement as true, made no further inquiry as to Ellis' authority or as to the character of the company, but confined its investigation to ascertaining the financial responsibility of E. T. Barden and C. F. Gydeson, which it found to be high.

In reference to the execution of these notes, the court further found as follows:

"The borrowing of these amounts by Ellis and the making of the notes was not necessary in conducting the business operated by him; nor is there any proof that it was a usual or customary practice among those engaged in similar enterprises to that conducted by the Beaumont Cadillac Company; nor was it customary or usual, in properly carrying out instructions, for Ellis or any one else to borrow money or execute notes, in the particular business of the Beaumont Cadillac Company. It was directly opposed to his instructions."

The note for $425, dated December 21, 1916, and the note for $500, dated January 8, 1917, were executed after December 8, 1916. All the other notes sued on were originally made prior to that time. The stockholders of the Houston Motor Car Company, and their ownership of stock therein, are E. T. Barden, 51 per cent.; C. F. Gydeson, 47 per cent.; and E. B. Barden, 2 per cent.

Judgment was rendered in favor of plaintiff on the two notes dated December 21, 1916, and January 8, 1917, and against plaintiff on all the other notes.

Appellant has duly filed assignments of error complaining of that part of the judgment against it, and, by cross-assignments, appellee Houston Motor Car Company complains of that part of the judgment against it.

Appellant's first assignment of error is that the court erred in finding that the Beaumont Cadillac Company was a branch establish-

ment of the Houston Motor Car Company.

Its fourteenth assignment is that the court erred in its conclusion of law to the effect that "plaintiff is not entitled to recover against E. T. Barden or C. F. Gydeson anything."

[1] We cannot sustain either of these assignments. On the whole record, the court was fully justified in finding that the Beaumont Cadillac Company was a branch establishment of the Houston Motor Car Company. The following excerpts from testimony of the witnesses seem to us to make this clear:

Mr. E. T. Barden testified:

"The Houston Motor Car Company is a corporation organized under the laws of Texas and has been in existence for 14 years. I am its president and secretary, and have been since its organization. C. F. Gydeson is vice president, and E. B. Barden is secretary. The Beaumont Cadillac Company is not a corporation and it has no charter. The Beaumont Cadillac Company is owned by the Houston Motor Car Company and has been so owned since its organization, possibly in the spring of 1915. We opened it here with Mr. De Witt in charge as manager. * * * We hired him or simply gave him his orders to come here and take charge of the stock, we to furnish all the automobiles and supplies and things of that sort from Houston out of our stock, and he to sell them under our supervision and remit us the money. * * * This arrangement continued about a year, when Mr. Ellis came here and took his place. * * * The Houston Motor Car Company financed the Beaumont Cadillac Company, and it was done by supplying the automobiles and tires and supplies and things of that sort that we sent over here. All parts that were necessary for this branch, all Cadillac parts for the repair of automobiles, were paid for by the Houston Motor Car Company out of the Houston office. * * * The Beaumont Cadillac Company never at any time declared any dividends. * * * The Houston Motor Car Company had ample capital and credit to finance the Beaumont Cadillac Company. The Houston Motor Car Company had other branches, to wit, the Galveston Cadillac Company and the San Antonio Motor Car Company. * * * The Beaumont Cadillac Company was not composed of myself, Mr. Gydeson, and the Houston Motor Car Company. * * * The Beaumont Cadillac Company is owned by the Houston Motor Car Company, which is a corporation. The Beaumont Cadillac Company was not incorporated. * * * I made no effort to get a charter from the state, it had no directors, it had no officers except Ellis as manager, it had no meetings of a Board of Directors, it had no seal, no chairman, no vice president, and no secretary or treasurer and it kept no record books except what his business was, and it had no minute books of any meetings, and made no effort to incorporate, and never had the intention to incorporate. * * * The Houston Motor Car Company bought those cars outright less the discount from the Detroit office. * * * The blank forms show that all the contracts covering the sale of Cadillac cars were made with Houston Motor Car Company and not with Beaumont Cadillac Company."

218 S.W.—41

C. F. Gydeson testified:

"During the time Mr. Ellis was in charge here, the Beaumont Cadillac Company did not pay for any of the automobiles sold here only in so far as they remitted proceeds of all sales to the Houston Motor Car Company. * * * They didn't pay for any of the stock that they carried on hand here. * * * I never at any time entered into any articles of agreement in writing to form a partnership with Mr. Barden and Mr. Ellis under the name of Beaumont Cadillac Company and never agreed verbally with Mr. Barden and Mr. Ellis to form a partnership to be known as the Beaumont Cadillac Company. * * * We regarded the Beaumont Cadillac Company as a department of the Houston Motor Car Company. We regarded it as a branch of the company. The Houston Motor Car Company received the profits, if any, that were made by the Beaumont Cadillac Company. * * * The Beaumont Cadillac Company does not show any profit on the books. The Beaumont Cadillac Company is merely a branch or department. These books don't show any profit. I made the statement to Mr. Butler that all the profits made by the Beaumont Cadillac Company went to the Houston Motor Car Company; yes sir. The profits that the Beaumont Cadillac Company made were the same as the profits of our repair department or our tire department or any other department. Under our dealings with the Beaumont Cadillac Company, according to these books, we kept here, it was not possible for it to make any profit. They don't show any profit at all. According to those books we never did get any profit out of the Beaumont Cadillac Company. As a matter of fact we certainly did. We got it by charging the department with the goods at cost and crediting us with the total receipts.

"It would show a department or branch profit, whatever you call it. We were dealing with the Beaumont Cadillac Company as a department, not as a separate and distinct institution, and making a profit off of them. Those books were purposely made as a department record, and show no profit. * * * The Beaumont Cadillac Company did not keep any profit account at all, nor did they ever have a book in which they entered up the profit account. If there was a profit account it was kept in Houston, and if there was a profit the Houston Motor Car Company made it."

The record shows that E. T. Barden, who was president of the Houston Motor Car Company, also had other interests which were handled through the Beaumont Cadillac Company. For instance, he traded personally under the name of the Federal Motor Sales Truck Company, and also the Barden Electric & Contracting Company. He owned rent property in Beaumont, this rent being collected by Mr. Ellis. He was president of the San Jacinto Motor Car Company. Mr. Gydeson and E. B. Barden were not interested in these other enterprises. Mr. Ellis sold cars and trucks for these other motor companies, and also supplies for Mr. Barden in his electrical business. The proceeds of these sales and the collections for the rent were deposited in plaintiff's bank to the credit of the

Beaumont Cadillac Company, and remittances were made to Mr. Barden from these deposits. Also, while Mr. Ellis was manager of the Beaumont Cadillac Company, the Houston Motor Car Company wrote him, sometimes addressing the letters to Ellis, and again addressing the letters to the Beaumont Cadillac Company, giving him instructions as to renting a building for the use of the Beaumont Cadillac Company. These letters were signed "Houston Motor Car Company." The replies from the Beaumont Cadillac Company were signed "Beaumont Cadillac Company, by H. D. Ellis, Manager." On these facts, it is insisted that the Beaumont Cadillac Company, in law, could not be a branch of the Houston Motor Car Company, and that it was necessarily a partnership composed of E. T. Barden and C. F. Gydeson; the proposition advanced by appellant being:

"It is our contention that the defendants E. T. Barden and C. F. Gydeson are liable in this case as partners because the Beaumont Cadillac Company was not incorporated and was neither a corporation de jure nor de facto."

No contention is made in this case by appellee that the Beaumont Cadillac Company was a corporation either de jure or de facto; the Houston Motor Car Company having answered to the effect that the Beaumont Cadillac Company was a part of its organic business, and was a branch establishment of the Houston business. It is true that the officers and directors of the Houston Motor Car Company exceeded their authority in opening this branch office. But, if it be conceded that the Beaumont Cadillac Company transacted all the business as claimed by appellant (the facts being enumerated above), the only conclusion would be that the Houston Motor Car Company exceeded its corporate authority in so doing. It has not shielded itself under the plea that the acts of its officers and directors in opening this branch establishment were ultra vires, but holds itself responsible for all acts done by 'Ellis as its manager, within the scope of his authority. Hence we conclude that the trial court was not in error in finding that the Beaumont Cadillac Company was a branch establishment of the Houston Motor Car Company.

Appellant pleaded that the Beaumont Cadillac Company was a partnership composed of Ellis, Barden, and Gydeson; but in its brief this admission is found:

"Under the evidence in the record, it is probably to be conceded that H. D. Ellis was not a partner in the business of the Beaumont Cadillac Company."

Again, appellant does not seek to hold Gydeson and Barden as partners on the theory that the Houston Motor Car Company was doing an ultra vires act, or that the officers and directors of the Houston Motor Car Company exceeded their authority in opening this branch establishment. On this issue appellant says:

"There never was any issue raised under the pleadings or presented in argument to the court in the trial of the case that plaintiff was seeking to hold the stockholders of the Houston Motor Car Company, as partners, liable in this suit. Plaintiff's petition simply alleges that the Beaumont Cadillac Company was a partnership, of which Barden, Gydeson, and others were partners."

[2] There is not a scintilla of testimony in the record that Barden and Gydeson entered into a partnership by agreement. Then, if the court erred in the conclusion of law complained of, that is, that "plaintiff is not entitled to recover against E. T. Barden or C. F. Gydeson anything," it must be on the theory that a partnership existed by estoppel. This theory is duly presented by appellant, both by proper assignments and propositions thereunder. Appellee answers this proposition by saying that this issue is not raised by appellant's pleadings. We are inclined to agree with this construction of appellant's petition. However, as we will not place our disposition of this proposition on this ground, we will not quote from the pleadings.

We do not find in the record any testimony that Barden and Gydeson knew that Ellis had made a statement to appellant that the Beaumont Cadillac Company was a partnership, nor that he was in any way holding them out to appellant or any one else as a partnership of which he was a member, or of which he was agent. In the sale of all cars made by him on credit, the contract was not between the Beaumont Cadillac Company and the purchaser, but between the Houston Motor Car Company and the purchaser, except in the sale of the car to Nees. All of the contracts contained this clause:

"This order is not binding on the Houston Motor Car Company until signed by an officer of the company. Houston Motor Car Company, by E. T. Barden, President."

Two officers in appellant's bank bought cars from this branch establishment signing contracts, containing this clause. If Barden and Gydeson are to be held as partners by estoppel, it must be by facts showing that they knew that Ellis was representing them to be partners, and that appellant dealt with Ellis on this representation, and that Barden and Gydeson remained silent when they should have spoken. The record does not sustain any such theory. In fact, we find no testimony in the record raising any such issue.

[3] By the eighth assignment of error, appellant complains of the following portion of the nineteenth finding of fact by the trial court:

"Ellis owed all the time during which these notes were negotiated with plaintiff's bank to the Houston Motor Car Company for shortages

considerably more money than he obtained on the notes, and the Houston Motor Car Company did not receive the benefits of the proceeds of the notes."

The court was correct in finding that Ellis owed the Houston Motor Car Company more money than he obtained on the notes. It is true that Ellis borrowed this money to cover a shortage with the Houston Motor Car Company, but this was not known to the Houston Motor Car company. It received and accepted the remittances from Ellis in good faith, without notice of Ellis' wrongful act, believing that the funds were its own.

In the case of Case v. Hammond Packing Co., 105 Mo. App. 168, 79 S. W. 732, Justice Ellison, speaking for the court, decides this proposition against appellant:

"It [defendant] received and accepted the money as money due from King which he had collected from customers. Money is a current fund, which any one without notice has a right to receive in good faith in payment of a debt, without inquiring into the source from which it comes; and the person so receiving it cannot be compelled to restore it to him who was the true owner. * * * If money due a principal from his agent is obtained by such agent by the unauthorized use of the principal's name, and paid over to the principal, who receives it in good faith, without notice, he is not liable to the party from whom the agent got the money. The fact that he keeps the 'money after being informed of how the agent obtained it is not a ratification."

The eighth assignment is overruled.

Under the ninth assignment, appellant brings forward the transactions which we have above stated. We have not followed appellant's construction of these facts altogether in giving this statement; but we have examined the record on the citations given, and our statement is as full and fair in favor of appellant as the record will sustain.

On these facts the following proposition is advanced:

"The evidence adduced upon the trial shows the following facts (referring to the facts which we have stated above), establishing Ellis' authority to borrow money and to execute the note sued upon, all of which were within the knowledge of the plaintiff and relied upon by plaintiff to establish Ellis' authority in the premises. * * * Considered as a whole and in their logical sequence, the transactions enumerated under this assignment, all of them known to the bank and relied upon by it, had a very material effect in leading the bank to the conclusion that Ellis had the authority to borrow money for the Beaumont Cadillac Company."

[4] Under the fifteenth assignment, appellant advances the proposition that these facts are sufficient, as a matter of law, to show. apparent authority in Ellis to execute these notes.

Appellant is not correct in the statement that all of these facts were known to the bank and relied upon by it in making the loan, as shown by the court's twentieth finding of fact, which is as follows:

"Other transactions of a minor nature on Ellis' part appear from the evidence. * * * None of these transactions were known and relied on by the bank (plaintiff) except the making of the checks and notes by Ellis to it, deposits of the proceeds thereof, the Nees and Guiterman contracts for the purchase of cars, and the transaction involving the sale to it in the name of Beaumont Cadillac Company of a note for $900 and remitting the proceeds thereof."

The "other transactions of a minor nature" referred to by the court in this finding, as well as all other facts found by the court as to the things done by Ellis, are clearly reflected by the above statement. We cannot sustain appellant's proposition that the facts of this case are sufficient, as a matter of law, to show apparent authority in Ellis to execute these notes. No contention is made here (though raised by appellant in its pleadings) that such authority actually existed or that it was necessary for him to exercise such authority in order to properly discharge the duties of general manager of the Beaumont Cadillac Company. Notwithstanding the failure to show these facts, appellant does contend that such authority should be inferred from the facts we have given above.

The general rule under which authority can be inferred in an agent to borrow money in the name of his principal is thus given by 2 Corpus Juris, 656:

"Power to borrow money is not to be inferred without clear evidence of such grant. Such authority must be expressly conferred or necessarily implied from the authority granted, and will not be inferred from a mere general authority, unless the character of the business or the duties of the agent are of such a nature that he is bound to borrow money * * * in order to carry out his instructions or the duties of his office." ·

The adjudicated cases sustain fully this rule.

In Henderson Mercantile Co. v. National Bank of McKinney, 100 Tex. 344, 99 S. W. 850, a case where the facts on apparent authority are stronger than in this case, the Supreme Court of this state said:

"There was no evidence that the mercantile company authorized Dreebin to execute these notes, or that, knowing of the fact that he had done so, it had ratified and adopted his acts; therefore, the notes proved nothing against the mercantile company, and were improperly admitted in evidence."

In the case of Case v. Hammond Packing Co., supra, the court said:

"An agent to sell and collect the price has no authority to borrow money for or in the name of his principal, even though it be for use in the principal's business, and the principal could not

be held, unless, of course, he should ratify the act."

In Butts v. Ajax-Grieb Rubber Co., 169 Mo. App. 657, 155 S. W. 837, a case very similar to this, on apparent authority, Justice Trimble, speaking for the court, said:

"The fact that one is made the general agent in a transaction or carrying on of business does not authorize the borrowing of money therefor unless such borrowing is absolutely necessary and requisite to carry it on."

In Jackson v. National Bank, 92 Tenn. 154, 20 S. W. 802, 18 L. R. A. 663, 36 Am. St. Rep. 81, it is said:

"The rule is strictly enforced that the authority to execute and indorse bills and notes as agent will not be implied from express authority to transact some other business, unless it is absolutely necessary to the exercise of express authority."

Now, under the rule above announced, the tenor of which is not disputed or question by any responsible authority, we hold, notwithstanding Ellis was general. manager of the Beaumont Cadillac Company, and as such agent had authority from his principals to sell automobiles and automobile supplies, and with their permission to sell them on deferred payments, and to buy supplies from local merchants, and employ and discharge employés at his pleasure, and to pay salaries from funds of the Beaumont Cadillac Company, and to keep the funds of the Beaumont Cadillac Company in plaintiff's bank, and to check thereon, and to collect rent and to conduct in the name of the Beaumont Cadillac Company different lines of business for E. T. Bardon, and to collect the proceeds thereof and deposit the same in the name of the Beaumont Cadillac Company, and to remit therefor from the funds of the Beaumont Cadillac Company deposited in plaintiff's bank, and to discount the notes of the Beaumont Cadillac Company, and to handle the proceeds of such notes through appellant's bank, that as a matter of law Ellis would not have apparent authority to execute the notes sued on in this case. In view of the fact that no such actual authority, existed, and that its exercise was not necessary for a proper discharge of his office as general manager, and of the duties required of him as such, we believe we would be justified in saying that these facts do not even make an issue of apparent authority, unless it arises under the issue of estoppel.

This issue is raised by appellant's petition, and is duly brought forward under proper assignments and propositions. But what are the facts relied upon to establish this issue as a matter of law? In our opinion, to constitute error, the trial court having. found against appellant, it must appear that there was no issue of fact made against this point.

The trial court found as to all the circumstances we have set out above that—

"None of these transactions were known and relied on by the bank (plaintiff) except the making of the checks and notes by Ellis to it, deposit of the proceeds thereof, the Nees and Guiterman contracts for the purchase of cars, and the transaction involving the sale to it in the name of the Beaumont Cadillac Company of the note for $900, and remitting the proceeds thereof."

In addition to this finding of the court, we further find that appellant knew that the books of the Beaumont Cadillac Company were being audited every 60 or 90 days. Giving these findings the utmost scope, the facts so found cannot take this case out of the rule announced by the Supreme Court in Dreebin v. Bank, supra.

[5] As we understand the facts of that case, as well as most of the other cases cited by us, they make a stronger case of estoppel than do the facts in this case. However, appellant seeks to distinguish this case from those cited, on the ground that appellant was guilty of negligence in failing properly to audit the books of the Beaumont Cadillac Company. But the negligence of the appellee, no matter how obvious, must have misled appellant to its injury in order to be the basis of an estoppel. Appellant does not show that its knowledge of the custom of auditing the books was one of the reasons for making this loan. Mr. Nees, on whose authority these loans were made, testified as follows:

"I was not loaning this money on the credit of Ellis. I would not have loaned Ellis on his own credit over $50 or $100. The loans as made by the bank were made upon the representations of Mr. Ellis that those other gentlemen, Mr. Barden and Mr. Gydeson, were connected with the Beaumont Cadillac Company. I looked up the record of these two gentlemen and found them mighty good, and the bank, on the strength of these investigations and the result of it, made these loans."

In the face of this testimony, we. cannot say that the court failed to give the proper weight to all the facts and circumstances in this case in finding against appellant. Therefore the judgment against appellant is in all things affirmed.

Appellee's first cross-assignment of error complains of the finding of the trial court (quoting from assignment) that—

"The discounting of the note on December 6, 1916, by Ellis in the name of the Beaumont Cadillac Company, and the remitting of its proceeds to E. T. Barden, who was president of the Houston Motor Car Company, and its general manager, and the failure to register any protest thereto or make any directions or advice to plaintiff, together with the previous transaction, was sufficient to clothe Ellis with apparent authority (so far as concerns plaintiff) to thereafter execute notes in the name of

the Beaumont Cadillac Company and the Houston Motor Car Company by that act, coupled with what had gone before, thereby apparently held Ellis out to plaintiff as possessing the authority to borrow money and to execute or indorse notes in the name of the Beaumont Cadillac Company, and were negligent in failing to advise plaintiff thereafter"

—because such finding is contrary to the great preponderance of the evidence, and the evidence is insufficient to support same, in that it is undisputed that the appellant did not make any of the loans in reliance on the fact that said note was discounted.

The second assignment complains of the conclusion of law basing liability against it on this finding.

[6] These two cross-assignments we sustain. It does not appear from the quotation we have just above given from Mr. Nees' testimony that the discounting of this note in any way entered into his judgment or affected him in extending these loans to the Beaumont Cadillac Company through Mr. Ellis as manager. We have not been cited by appellant to any testimony from Mr. Nees that would extend the scope of this quotation. Where actual authority does not exist, apparent authority or estoppel cannot be established except by facts known to the party dealing with the agent and relied upon by him in such dealings.

Because the trial court erred in this finding of fact and conclusion of law, that portion of the judgment in favor of appellant and against appellee is reversed.

In view of the fact that probably the evidence of the appellant was not fully developed on the issue raised by these cross-assignments,· and on the issue of appellant's reliance on the fact that the Beaumont Cadillac Company's books were being periodically audited, as a basis for the credit extended, we are remanding this branch of the case for a new trial.

Affirmed in part, and in part reversed and remanded.