JOSIE BUTTS, Respondent, v. AJAX-GRIEB RUBBER CO., Appellant.

Kansas City Court of Appeals, April 7, 1913.

1. AGENCY: Authority of Agent to Borrow Money and Bind His Principal. A general agent appointed to carry on a business has power to do those things necessary and proper to be done in carrying on the business in the usual and ordinary way. The extent of the implied or incidental authority of such general agent depends upon the nature of the business. The appointment of such an agent to transact or carry on a business does not by implication authorize the borrowing of money therefor by the agent unless such borrowing is absolutely necessary and requisite to carry it on. It is not sufficient that such borrowing is convenient, advantageous or more effectual in the transaction of the business provided for.

169 Mo. App.—42

2. ——: ——. The fact that a foreign corporation, to avoid taking out a license to do business in this State, appoints a general agent to conduct its branch store in this State in his own name will not give the agent implied authority to borrow money and bind the principal where the lender knew he was acting as agent and was not in fact the owner of the property.

3. ——: **Money Lent to Agent: Recovery of Against Principal.** Where one lends money to an agent and seeks to recover of the principal, the plaintiff should show that the money was lent to the agent *as* agent and on the credit of the principal, and not simply to the agent individually. It should not be left problematical whether such loan was one to the agent individually or to the principal and for his benefit.

4. ——: ——: ——: **Instructions.** Even if, by reason of the facts, the borrowing of money was within the apparent scope of the agent's authority, still, where the facts are in dispute, the instructions to the jury for plaintiff must set out the facts which must be found in order to support the theory of the agent's implied authority.

5. ——: ——: ——: **Ratification.** In order to show ratification by a principal of an agent's unauthorized act, knowledge of such agent's act on the part of the principal must be shown.

6. ——: ——: ——: ——. Where the case was submitted to the jury on the theory that the borrowing of the money by the agent was ratified by the principal, the instructions must not omit the element of the principal's knowledge of such act of the agent. If such element is omitted it is reversible error.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

REVERSED AND REMANDED.

*John G. Schaich* and *Hunt C. Moore* for appellant.

*O. H. Barker* for respondent.

TRIMBLE, J.—Plaintiff sues to recover of defendant three hundred dollars, the balance due on a loan made by her to defendant's agent Enoch Graf.

Defendant is a corporation, with its home office and manufacturing plant located outside this State,

and having wholesale and retail stores in different cities throughout the United States. Graf was defendant's general agent to manage defendant's store at Kansas City. He was termed branch manager by the defendant.

The store in Kansas City was opened by Graf September 1, 1908, and was run in Graf's name. He testifies that the company, being a foreign corporation was, without any license to do business in this State as required by section 3342, R. S. Mo. 1909, and to avoid taking out such license, the business was all done in his name. The business consisted of selling automobile supplies, mechanical rubber goods, druggist sundries and bicycle tires.

There is no doubt but that the business was run in Graf's name and that no bank account was ever opened in Kansas City in defendant's name. It is conceded also that Graf had full management of the branch and its business here. He employed the traveling men, office help, etc., and had general charge of the business. It is also undisputed that Graf's salary, which at first was $125 and later $150 per month, and rent of the store room were paid by defendant direct from the home office.

Defendant's evidence is that it furnished Graf with a sum of money with which to open the store, and that out of this Graf paid for office help, petty expenses and the other expenses of the business, for all which he took receipts and at the end of each week these receipts, with a statement of his expenses, were sent in and defendant thereupon remitted a sufficient sum to cover such expenditures. At first the amount stipulated for expenses each week was $200, then it was increased to $300 and later to $500 per week as the business grew. Defendant further claims that these weekly remittances were promptly sent and were ample to cover the expense accounts sent in, and that, so far as the business was concerned, there was

no necessity to borrow money nor did it know any was being borrowed or used in the business; that the money sued for was not in fact so used, and that Graf had no authority to borrow money.

On the other hand Graf, testifying for plaintiff, says that the business was opened by him September 1, 1908, with a required outlay on his part much larger than the amount furnished by the company; that he sent in a statement of it amounting to $500 and the company sent him only $200 holding back $300. He further testified that the only account opened with the bank was in his name and that the money from sales of goods was deposited to this account and the expenses, outside the store rent and his salary, were paid by him out of this bank account; and that a statement of these expenses with receipts therefor together with a check for the balance of the money remaining was sent each week to defendant; that only the expenses for traveling men, office help and petty expenses were reported in these weekly statements, on which he was to receive a weekly reimburement. That a third class of expenditures was for repairs of goods sold on guarantee and for advertising necessary to establish the business and that these expenses were not included in the weekly statements but were to be settled for at the end of the year at the Chicago Automobile Show in February. These expenses were such as would be necessary to cover the territory tributary to Kansas City being parts of Missouri, Kansas, Nebraska, Oklahoma, Arkansas and Texas; the requirement made of Graf being that he do a thirty thousand dollar business the first year. He testified that he did a forty thousand dollar business.

It is Graf's contention that the defendant did not remit promptly to cover these weekly statements sent in by him; that in October, 1909, the amount of expenses sent in by him and not reimbursed by the company amounted to $850 which was finally repaid to him

Butts v. Rubber Co.

by the company but no additional sum was deposited for expenses so that he was obliged to borrow money to keep the business going, and on November 29, 1909, he borrowed of plaintiff the sum of $500, a part of which is herein sued for; and Graf also swore that he had borrowed money of plaintiff on other occasions and that defendant's president knew it and made no objection but afterwards gave him money by which these former loans were repaid. He further testified that the money borrowed of plaintiff was for the defendant and was used in defendant's business and not for himself individually.

No communication was had, either directly or indirectly, between plaintiff and the defendant company until long after the loan had been made and after Graf had been discharged as defendant's agent.

Shortly after the loan was made, defendant, finding that Graf was short in his accounts, discharged him and had him arrested for embezzlement, and then the debt was presented to the defendant's president who denied that Graf was a manager but claimed that he was only a traveling salesman.

There was no note given by Graf to plaintiff. Simply her check to him for $500 and afterwards he paid her back $200 of it.

Under the instructions of the court the jury found a verdict for the balance due plaintiff with interest from date of demand of payment. Defendant appeals.

Although the whole case was tried in the circuit court on the theory that the defendant had ratified the act of Graf in borrowing the money, yet plaintiff now insists that she is entitled to recover without regard to the question of ratification. Her position seems to be that, inasmuch as defendant was a foreign corporation and was evading the law in reference to a license, and had appointed Graf its general agent to conduct the business in his own name and make

all contracts necessary therefor, Graf was thereby invested with apparent authority to borrow money for and bind his principal regardless of whether he was in fact authorized to do so or not. This might, perhaps, be true if plaintiff was led to believe that Graf was the owner of the business and that plaintiff made the loan to him on the faith and credit of such ownership; and the only bearing the fact that the defendant was a foreign corporation and evading the law can have, is that this made it necessary to hold Graf forth as the ostensible owner of the business. But plaintiff's own evidence shows that she knew he was not the owner but only the agent of the defendant in running said store, and made the loan to the agent solely on his representation that he needed it in the business and that it would be repaid later, whether out of the business or by reimbursements from the company does not appear.

The same day plaintiff gave Graf the check for the money lent, Graf gave her a check, dated a few days later, for the repayment of the amount borrowed with an additional sum for interest, and requested her not to present it for payment until some- time later. So that, if plaintiff was told that the method of doing business was for Graf to pay all expenses and send statements to the company for which the latter was to send money to repay Graf and that the company was slow in doing so, making it necessary for the agent to borrow money and pay interest on it until the company should see fit to reimburse him, this was such a queer and unusual way of doing business as would require her to ascertain whether the agent was not borrowing it for himself in order to tide over his own unauthorized shortage, and, if he were borrowing it for the company, whether he had authority to do so. And as the check was made simply to Graf himself and Graf in turn immediately gave a check to repay her, it could be said that plaintiff

did not make the loan to defendant at all but merely
to Graf individually with the expectation that in a
few days he would be in a position to repay same.
It is not exactly clear, however, just what Graf did
tell plaintiff except that he was borrowing it for the
company and that the money was to be used in the
business. This does not show, however, that Graf
claimed to plaintiff to have authority to borrow money
in the company's behalf or that he in fact was bor-
rowing it on the company's credit or to discharge its
obligations.

Assuming, however, that plaintiff did not know
the method of doing business as claimed by Graf, and
that all she knew was that he was agent for the com-
pany and needed money for the business, the question,
on the contention now made by plaintiff for the first
time, is, has the general agent of a business corpora-
tion the implied power to borrow money and bind his
principal therefor, in the absence of express author-
ity or ratification?

The extent of the implied or incidental authority
possessed by a general agent managing a business de-
pends upon the nature of that business. As a general
rule it may be said he has power to do those things
which are necessary and proper to be done in carrying
out the business in the usual and accustomed way.
[Mechem on Agency, sec. 395.] And the same au-
thority in section 399 says the fact that one is made
the general agent for the transaction or carrying on
of a business does not authorize the borrowing of
money therefor unless such borrowing is absolutely
necessary and requisite to carry it on.

In Bickford v. Menier, 107 N. Y. 490, it is held
that to authorize an inference of authority in an agent
to borrow money it must be practically indispensable
to the execution of the duties really delegated. It is
not sufficient that the act is convenient or advanta-
geous or simply more effectual in the transaction of

the business provided for. In that case defendants lived and did business in France and sent an agent to New York City to start a business there of selling defendant's goods, which he did, carrying on the business in his own name.

We have not been cited by plaintiff to any authority holding to the contrary. The cases cited by her are cases involving the employment of attorneys to help defend and preserve the principal's property, a thing vastly different from the authority to borrow money and bind the principal therefor.

But even if the borrowing of money may have been within the apparent scope of the agent's authority, still, as the facts were disputed, this case, if submitted on that theory, should have required the jury to find facts which would support that theory before returning a verdict for plaintiff. But, as stated before, the case was tried and submitted by both sides on the theory that a ratification, express or implied, was necessary to be shown in order to bind defendant.

Plaintiff's first instruction told the jury that if they found certain facts "then defendant has ratified said act of Graf and your verdict must be for plaintiff." But in the list of facts set out as required to be found by the jury, in order for them to say that defendant ratified the borrowing of the money, no mention whatever is made of the element of knowledge on the part of defendant concerning Graf's act. The question of defendant's knowledge of the borrowing of the money and of his use thereof in the business was not submitted to the jury. There can be no ratification by the principal of an agent's unauthorized act in the absence of knowledge on the part of the principal. True, Graf says the company knew, but the company says it did not know, and the written statements sent by Graf each week to the company made no mention of this loan from plaintiff. So that the question of knowledge was for the jury.

Defendant prayed the court to instruct the jury that "even should you find and believe from the evidence that Enoch Graf did borrow money from plaintiff still your verdict must be for defendant unless you should find and believe from the evidence that defendant had authorized Enoch Graf to borrow money for use in its business or that said defendant approved of Graf's act." This instruction the court modified by striking out the word "approved" and inserting the word "ratified" by and adding at the end of the instruction the words "as set out in another instruction" so that, when given, the instruction read as follows:

"The court instructs the jury that even should you find and believe from the evidence that Enoch Graf did borrow money from plaintiff, still your verdict must be for defendant unless you further find and believe from the evidence that defendant had authorized Enoch Graf to borrow money for use in its business or that said defendant ratified Graf's acts after it learned of the same, as set out in another instruction."

The words "as set out in another instruction" added to the instruction as drawn by defendant, take away its force because it refers to plaintiff's instruction No. 1 which is the only instruction where the question of ratification is mentioned. In that instruction the court erred as to what constituted ratification by leaving out the element of defendant's knowledge that Graf borrowed money and had used it in the business. For the errors in plaintiff's instruction No. 1 and defendant's instruction No. 1, the case is reversed and remanded for a new trial. All concur.