**AALCO PLUMBING SUPPLY COMPANY, Inc., Plaintiff-Appellant,**

v.

**JOHN L. HENSON PLUMBING COMPANY, Inc., John L. Henson, Mable R. Henson and Virgil A. Henson, Defendants-Respondents.**

**No. 54692.**

Supreme Court of Missouri, Division No. 1.

March 8, 1971.

Newell S. Ferry, St. Louis, for plaintiff-appellant.

Cupples, Cooper & Haller, Albert J. Haller, Clayton, for defendants-respondents, John L. Henson Co., Inc., John L. Henson and Mable R. Henson.

William H. Bruce, Jr., Ellington, for defendant-respondent Virgil A. Henson.

WELBORN, Commissioner.

Suit on note by payee against maker and endorsers. Trial court, in nonjury trial, found for defendants. Plaintiff appeals.

The petition in this case is in form of a conventional action on a note. It alleges that, on September 8, 1958, John L. Henson Plumbing Company, Inc., executed a note payable to plaintiff Aalco Plumbing Supply Company, Inc., and defendants, John L. Henson, Mable R. Henson and Virgil A. Henson, endorsed the same. The face amount of the note was $33,544.80, payable six months after date. The petition alleged that $5,000 had been paid on the note and that 'the balance was unpaid. It sought judgment for $28,544.80, with interest at 6% from September 8, 1958 to March 8, 1959, and at 8% thereafter, until paid, as called for in the note. Insofar as here important, defendants' pleadings raised the defense of payment.

Plaintiff's president, Sam Turken, testified that plaintiff was in the wholesale plumbing supply business in St. Louis. John L. Henson Company, Inc., a plumbing contractor, did business with plaintiff. In 1958, the Henson Company's account with plaintiff became quite large and plaintiff was unable to collect the account as it became due. According to Turken, he asked the Henson Company to give a note in the amount of the balance it then owed, to be endorsed by the officers of Henson individually. On September 8, 1958, the note was executed for $33,544.80, the amount then owed by the Henson Company to plaintiff. It was signed by John L. Henson as president of Henson Company and endorsed by Virgil Henson, "Vice-Pres.," and Mable R. Henson, "Sec. Treas."

On September 17, 1958, a payment of $5,000 was endorsed on the note. On or about that date, John, Virgil and Mable Henson endorsed the note individually. No further payments are shown on the note.

According to Turken, at the time the individual defendants endorsed the note, he told them "that this was the top credit we would give them, up to this amount, and that this note would remain with us until they quit doing business with us, it would

guarantee any and all payments up to this amount [of the note]."

Turken testified that, following the giving of the note, no credits, other than the $5,000, were given against the note on account of payments made by Henson Company. He stated that, as Henson made payments, they would specify what invoices the payments should be credited against in order to obtain mechanic's lien waivers for particular projects. "There was no credit given on the note. The note was merely a guarantee for any and all monies owed to Aalco."

According to Turken, the Henson Company went out of business in 1966. At that time Henson Company was indebted to Aalco. Turken said he demanded payment of the outstanding balance from John and Mable Henson who said they didn't have the money to pay it.

This suit was filed in June, 1966. A statement of Aalco's account with Henson, placed in evidence at the trial, showed that, taking into account credits against the account since the filing of the suit, the balance owed at the time of trial was $17,377.59. That amount, with interest, was the judgment sought by plaintiff.

All three defendants denied that, at the time of their personal endorsements of the note, there was any discussion or understanding with anyone representing Aalco that the note was guarantee of the Henson account in the future.

On this conflicting testimony, the trial court found that there had been no agreement that the note was to be security for all indebtedness of Henson, past and future. The trial court pointed out that Turken's testimony as to the agreement was contrary to letters he wrote Henson about its indebtedness. In a letter to Henson, dated March 26, 1959, Turken stated:

"The due date on your promissory note is approaching with a major portion of the amount still unpaid. At the same time we find ourselves short of cash with big pur-

chases necessary to maintain our inventories for the forthcoming season. We would appreciate payment of your outstanding balance; if that cannot be managed, a partial payment would be a big aid to us. But, if you cannot apply any payment against that note it will be necessary for us to borrow money at the bank by using your note as collateral for the loan. Please think this over and an immediate reply to this inquiry would be greatly appreciated."

In a second letter, dated March 29, 1960, Turken stated: "You know that your note that I have is past due and for some time now I've had to resort to a bank loan at the rate of 5½% a share of which rightfully should be yours."

In the review of this court-tried case: "The judgment [of the trial court] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Civil Rule 73.01(d), V.A.M.R.

■■■ A guaranty is simply a species of contract. 38 Am.Jur.2d Guaranty, § 1, pp. 995–996. Here there was no writing, other than the note itself, evidencing the alleged contract. Appellant sought to establish the contract by parol evidence, to which there was no objection. The trial court heard and considered the parol evidence and resolved the conflict in testimony against the appellant. We cannot say the conclusion was clearly erroneous. Certainly there was inconsistency between the letters written by Turken shortly after the transaction and the position he took at the trial. Even the petition in this case was framed merely as a suit on a note, without reference to a contract of guaranty.

The evidence of the course of dealings between Aalco and Henson subsequent to the giving of the note does not show that the conclusion of the trial court that there was no agreement that the note should guarantee the future open account was erroneous.

Mrs. Wagoner testified that she became the bookkeeper for Aalco in July, 1959. At that time there was a balance owed Aalco on the Henson account and the account was never paid in full. She stated that she was told nothing of the note here involved.

Mrs. Wagoner identified a series of monthly statements prepared by her on behalf of Aalco and sent to Henson. The first, dated April 25, 1960, showed a "Balance Forwarded" of $17,588.30. The statement listed each sales invoice and the charge on each purchase during the month preceding the date of the invoice. It also showed credits against the account, consisting of a single item of $2,290.16, leaving a balance due as of the date of the statement of $19,582.88. A similar statement, dated May 25, 1960, showed a balance due of $17,730.79.

The next statement introduced in evidence was dated January 31, 1961. However, according to the stipulation of the parties, there began to appear in the monthly statement, beginning July 25, 1960, an item referred to as an "Old Balance." The January 31, 1961 statement showed a "Balance Forwarded" of $20,143.11, and a balance due as of the statement date of $21,692.22. The statement further broke down the balance due as follows:

| "Old Balance | | 13,129.57 |
| bank charge | 11/31 | 59.61 |
| | 12/31 | 59.61 |
| | 1/31 | 59.61 |
| | | 13,308.40 |
| Oct balance | | 2,477.38 |
| | | 15,785.78 |
| Nov balance | | 3,162.23 |
| | | 18,948.01 |
| Dec balance | | 1,373.93 |
| | | 20,321.94 |
| Jan balance | | 1,370.28 |
| | | 21,692.22" |

The next statement introduced in evidence was dated August 31, 1961. It showed a balance due of $34,171.08. This amount was broken down into "Old Balance 11,267.15," followed by monthly balances for the months April through August. The October 31, 1961 statement showed a balance due of $25,225.62, broken down into: "Old Balance" of $10,267.15 and September and October balances.

The November 30, 1961 statement, which included a credit for $4,000 paid 12/1/61, showed a balance of $26,657.95. The "Old Balance" was shown as $6,267.15. Comparing this figure with the "Old Balance" shown on the October 31, 1961 statement shows that the $4,000 payment on 12/1/61 was credited to the "Old Balance."

The next statement introduced was November 30, 1962. It showed a balance of $7,865.97, made up of "Old Balance" of $4,088.15, "Bank Charge" of $18.74, and "Nov. Balance" of $3,759.08.

According to the parties' stipulation, the "Old Balance" shown on each statement between November 30, 1962 and April 30, 1965, was $4,088.15. The April 30, 1965 statement showed a balance of $23,536.67, with the "Old Balance" of $4,088.15. The statement contains a handwritten record of a payment of $9,318.75, with this notation: "Cashier's check to Aalco 5/21/65 to pay off Old Balance of $4,088.15." This notation was made by a Henson employee other than Mrs. Henson.

The May 31, 1965 statement showed no "Old Balance." The $15,502.91 balance it showed was broken down into seven monthly balances from November to May. No "Old Balance" was shown on any statement subsequent to the May 31, 1965 statement.

Mrs. Wagoner's explanation of the "Old Balance" was that it was simply an accumulation of previously unpaid invoices. She distinguished between the "Old Balance" and the concurrently shown several prior months' balances on the grounds that the monthly breakdown was to enable Henson to pay in full a month's charges and obtain a cash discount. No effort was

made to harmonize her testimony to that effect with her testimony that the discount was a 2% allowance for bills for the previous month if paid by the 10th of the following month. In other words, she states, in effect, that on the August 31, 1961 statement the April balance of $2,800 is shown in order to permit its payment with benefit of the discount. However, according to her testimony, the discount for the April account could have been received only if it had been paid by May 10.

Additionally, the evidence before us shows that the "Old Balance" was a declining figure which never increased. Thus, although the balance on Henson's entire account increased from $7,865.97 on November 30, 1962, to $23,536.67 on April 30, 1965, the "Old Balance" remained constant at $4,088.15 throughout that period.

■ According to Mrs. Henson, the Henson Company bookkeeper, after the note had been given to Aalco, she would make payments to Aalco on the Henson account. According to her, she would request that payments which she made be allocated between current indebtedness and "Old Balance." She testified that in conversations with Mrs. Wagoner and Mr. Turken the balance on the note was referred to as "Old Balance." A compilation by Mrs. Henson of all purchases by Henson from Aalco from the date of the note to November 3, 1962, and of all payments on the Henson account during that period, produced a figure which closely approximated the "Old Balance" of $4,088.15, shown on the November 30, 1962 statement. (Appellant contends that the trial court should not have permitted Mrs. Henson to testify to these figures appearing upon a document which had been marked as an exhibit but not introduced in evidence. The trial court's permitting the testimony was based primarily upon the appellant's use of the exhibit in cross-examining Mrs. Henson. The trial court properly permitted use of the document in the redirect testimony of Mrs. Henson. 31A C.J.S. Evidence § 190, p. 515.)

■ In view of this evidence, there is no reason to reject as "clearly erroneous" the conclusion of the trial court that the parties considered the "Old Balance" was the indebtedness of Henson to Aalco at the time of the execution of the note. There is no dispute that the "Old Balance" was paid. Therefore, the trial court's finding that defendants' obligation had been extinguished is, likewise, not clearly erroneous.

Appellant points to the fact that the Aalco bookkeeper knew nothing of the note and that the note remained in Aalco's possession as evidence that the trial court's findings were erroneous. These circumstances, viewed in the light of the entire course of dealing between the parties, do not call for rejection of the trial court's findings. Mrs. Henson testified that Turken told her when she asked for a copy of the note: "Your statement is your copy and your receipt." This statement, coupled with the absence of direct credits against the note, would support the conclusion that the note was given to secure the payment of the balance owed when it was given, rather than in payment of that balance, as found by the trial court. The payment of the principal obligation would, of course, satisfy the guaranty. Eberly v. Lehmer, Mo.App., 48 S.W.2d 151, 152–153[1]. Such conclusion is not inconsistent with the ultimate judgment of the trial court. This conclusion would explain the absence of credits directly to the note and the endorsers' apparent lack of concern after the account had been paid.

Appellant also argues that the note was secured by a chattel mortgage and that items of machinery covered by the mortgage were sold by appellant in 1966, and the proceeds credited against the Henson account. There was no evidence at the trial of a chattel mortgage. The note makes no reference to such security. There is no basis for considering conten-

tions arising out of the existence of a chattel mortgage.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.