STANDARD MEAT COMPANY, a corporation, Plaintiff-Appellant,

v.

TACO KID OF SPRINGFIELD, INC., d/b/a Taco Den, W. C. Van Eaton and R. C. Scanlon, Defendants-Respondents.

No. 10344.

Missouri Court of Appeals, Springfield District.

Aug. 5, 1977.

Loren R. Honecker, Charles Dudley Martin, Springfield, for plaintiff-appellant.

No appearance for defendants-respondents.

TITUS, Judge.

Plaintiff sold precooked taco meats to Taco Kid of Springfield, Inc., d/b/a Taco Den. Initially all sales were C.O.D. but later were made on open account in purported reliance upon alleged guaranties executed by W. C. Van Eaton and R. C. Scanlon. When the account became $3,850 in arrears plaintiff sued Taco and the averred guarantors. An interlocutory default judgment was entered against Taco and the cause proceeded to a bench-trial against the individual defendants. The court rendered judgment for plaintiff against Taco and exonerated the alleged guarantors. Plaintiff appealed.

Two identical printed forms (plaintiff's exhibits 2 and 3) were submitted by plaintiff to Taco when inquiry was made about buying meat on credit. The forms, sent in blank, were completed in Springfield and returned to plaintiff by mail. The front of each form is headed "Application for Credit", and the information written into the blanks on both forms was identical for all practical purposes. After "Billing name" and "Owner," Taco's name was inserted and the forms were checked to show that Taco was a "corporation." The name "Richard E. Luke" was written in the blanks calling for "Name of Buyer" and "Person responsible for payment of account." Following "Signature of Applicant" appeared the signature "Richard E. Luke" whose "Title" was designated as "Manager."

On the reverse side of each form appeared the following printing:

"For applicants that are not individual proprietorships it is necessary that the following be completed by a principal of the business.

Date _____

STANDARD MEAT COMPANY

[Address omitted]

Gentlemen:

In consideration of Standard Meat Company selling merchandise to _____ of _____ on open account, I hereby guarantee to Standard Meat Company the payment at ... of such sums of money as may at any time hereafter become due and owing to Standard Meat Company from them.

I agree that this guarantee shall remain in full force and effect subject to my written cancellation on thirty (30) days notice and that this guarantee shall cover all sums of money due and owing to Standard Meat Company on account of sales to _____ as of the expiration date hereof.

Sincerely yours,"

The first guaranty form (exhibit 2) was dated "3/8/71" and signed "W. C. Van Eaton president of Taco Kid of Springfield Mo, Inc." Taco's name was hand printed on the forms in the blank spaces. Plaintiff's representative said that because of dissatisfaction with the credit report on Van Eaton, a second guaranty was required. The second form (exhibit 3) was dated "7–15–71" and signed "R. C. Scanlon—Pres." Taco's name was hand printed in the blanks. By pen, the "I's" and "my" were scratched out and the words "We" and "our" substituted therefor.

Van Eaton and Scanlon were shareholders and directors of the Taco corporation. Scanlon owned the real estate occupied by the Taco restaurant. Van Eaton was the elected president of Taco. Scanlon had never been elected but "acted as president" after "all the stockholders got together and decided we didn't want [Van Eaton] to be the manager any more." In substance, Van Eaton and Scanlon testified that they had not executed the guaranty contracts as individuals but rather in their official corporate capacities to cause the Taco corporation to become the guarantor. Scanlon was allowed to state that the reason he had changed the "I's" and "my" on exhibit 3 to "We's" and "our" was to "make it absolutely clear in my own handwriting that I wasn't going to be personally responsible." Both Van Eaton and Scanlon acknowledged they had signed the guaranties to enable Taco, which they recognized was not an individual proprietorship, to secure merchandise on credit from plaintiff.

The trial court in its memorandum opinion noted "the application is made by the manager . . . presumably for a corporation [but] [a]nyone dealing with a corporation should be alerted to accepting an application executed by the manager . . . and plaintiff makes provision for this by the phraseology on the back of the exhibit that if the applicant is not an individual it should complete the back side, and it should be completed by 'a principal of the business.' . . . The question arises, 'Is Taco . . . agreeing to pay for all goods ordered under the application of the manager or [are Van Eaton and Scanlon] guaranteeing the account?' " The court settled on the first moiety of the question which thereby forced its conclusion that the corporation was the guarantor of the "goods ordered under the application of the manager." Also the court, without explicit explanation therefor, opined there was ambiguity between the obverse and reverse sides of the printed forms as completed, thereby making explanatory and clarifying oral testimony permissible.

We admit difficulty in following the reasoning of the trial court. This stems, in part, from the fact that the court seemingly attributed to the "Application for Credit" a degree of vitality possessed of potential contractual strength. The application was a simple supplication which neither unilaterally nor bilaterally bound anyone to anything. The blank forms merely served as a vehicle whereby those seeking credit could convey to plaintiff information for its consideration in determining whether credit would be extended vel non. Contrary to the pronouncement of the court nisi, no one would ever be ordering goods "under the application." Only two things reasonably could be inferred from submission of the application for credit and those lay in futuro, i. e., either plaintiff would or would not deliver goods on credit in the future. If plaintiff unilaterally determined to extend

credit, it would only be when it delivered goods that the acceptor thereof would be deemed in law to have inferentially or impliedly promised to pay for same. *Bennett v. Adams*, 362 S.W.2d 277, 280–281[6, 7] (Mo.App.1962). Both the interlocutory default judgment and the final judgment entered against Taco attest that its liability was not, and could not have been, predicated upon the "Application for Credit" but rather upon Taco's acceptance of plaintiff's goods on credit and its inferred or implied promise to pay therefor.

■ A guaranty is a species of contract [*Aalco Plumbing Sup. Co. v. John L. Henson Plumbing Co.*, 464 S.W.2d 10, 12[1] (Mo. 1971)] to be construed as other contracts. *Industrial Bank & Trust Co. v. Hesselberg*, 195 S.W.2d 470, 476[17] (Mo.1946). It is a collateral agreement for another's undertaking and is an independent contract which imposes responsibilities different from those imposed in an agreement to which it is collateral. *First National Bank of Clayton v. Frisco Park Realty Co.*, 510 S.W.2d 59, 62[3, 4] (Mo.App.1974). While it is held that contemporaneous agreements dealing with the same subject matter may be construed together as an aid in ascertaining the intention of the parties, this does not mean that those agreements constitute a single contract [*Elliott v. Richter*, 496 S.W.2d 860, 864[2] (Mo.1973)] for the liability of the guarantor remains primarily dependent upon the guaranty contract. It is the guaranty agreement which contains the express conditions on the guarantor's liability and which defines the obligations and rights of both the guarantor and guarantee. 38 Am.Jur.2d, Guaranty, § 73, at p. 1076. Any ambiguity in a guaranty contract should arise in the first instance from the guaranty agreement itself and neither a court nor the parties will be permitted to create an ambiguity where none exists. *Charles Palermo Company, Inc. v. Wyant*, 530 S.W.2d 15, 17[3] (Mo.App.1975).

■ Although, as previously noted, the application for credit harbored no legal significance, the liability of the alleged guarantors was ostensibly found wanting because of ambiguity attending the applications and the guaranty agreements. We perceive no ambiguity. On the applications, Taco was designated owner and its name and designation as "corporation" were inserted in the blanks following "Billing name." All addresses, telephone numbers, credit references and business descriptions written in the blanks on the application forms were Taco's. Albeit Richard E. Luke's name appeared as the person designated as "Buyer" and "Person responsible for payment of account," he was clearly designated as "Manager." It requires considerable straining to transmogrify the cognomen "manager" into an "altruist" imbued with such unselfish concern for the welfare of his corporate employer that he would undertake to bind himself personally for the payment of debts incurred through purchases made on behalf of the corporation. Corporations are artificial beings which can only act by agents and are responsible for the acts of their agents when done in the exercise of their agency. *Globe Indemnity Co. v. First Nat. Bank in St. Louis*, 133 S.W.2d 1066, 1071[3] (Mo.App.1939). Managers of businesses have authority to do things which are necessary to be done in carrying out the business in the usual and accustomed way. *Butts v. Ajax-Grieb Rubber Co.*, 169 Mo.App. 657, 663, 155 S.W. 837, 839[1] (1913). If not actual authority, the manager of an incorporated restaurant selling tacos would assuredly have apparent authority to purchase taco meats and obligate his corporate employer for the payment thereof. *Fielder v. Production Credit Association*, 429 S.W.2d 307, 313[7–9] (Mo. App.1968).

■ The guaranty side of the forms were, as directed, completed and signed by principals of Taco. Both undertook to guarantee to plaintiff the payment of "such sums of money as may at anytime hereafter [in futuro] become due and owing to [plaintiff] on account of sales to Taco." There was no ambiguity in the guaranty contracts unless it can be rightfully said that writing "Pres." or "President of Taco Kid" after the signatures of Scanlon and Van Eaton engendered ambiguity. We think not. The preface to the forms specified the guaran-

ties were to be completed by "a principal of the business", and the addition of a title which identified the signatories as principals of the corporation was merely descriptio personae. Obviously there was no attempt to execute the guaranties for or on behalf of the corporation. Also, there was no manifestation of the part of the signatories to enter into a contract between plaintiff and the corporate entity as was the situation in *Wired Music, Inc. of The Great Midwest v. Great River Steam Boat Company*, 554 S.W.2d 466 (Mo.App. filed June 14, 1977).

"As Judge Ridge stated in *A. E. West Petroleum Co. v. Atchison, T. & S. Ry. Co.*, 108 F.Supp. 644, 648 (W.D.Mo.1953), aff'd 212 F.2d 812 (8th Cir. 1954): '. . . So in an interpretation [of a contract] which evolves an unreasonable result, when a more probable and reasonable construction can be adopted, every intendment will be against the former construction or one which would operate as a snare.'" *Kansas City, Missouri v. Kansas City, Kansas*, 393 F.Supp. 1, 5 (W.D.Mo.1975). We agree with perspicacious counsel for plaintiff that a guaranty contract signed individually by principals of the corporation if construed to be "the corporation's guaranty of its own contract [would be] redundant, illusory, absurd, and therefore unreasonable." Cf. *Gallatin Trust and Savings Bank v. Henke*, 154 Mont. 170, 461 P.2d 448 (1969); *American Casualty Company v. Howard*, 175 So.2d 355 (La.App.1965); *Gross v. Lamme*, 77 Nev. 200, 361 P.2d 114 (1961); *Chesebro, Robbins and Graham v. Leadbetter*, 19 Conn.Sup. 422, 116 A.2d 578 (1955).

While it is generally stated that if a contract is fairly open to more than one interpretation, it will be construed against the party who prepared it [*John Deere Company v. Hensley*, 527 S.W.2d 363, 365[2] (Mo. banc 1975)], the rule is more accurately phrased that the instrument should be construed against the party *using* it. *Brown v. Houghton Const. Co.*, 227 S.W. 137, 140[3] (Mo.App.1920); 3 Corbin on Contracts, § 559, p. 262 et seq.; 4 Williston on Contracts, 3rd Ed., § 621, p. 760 et seq. In this case plaintiff merely provided printed blank guaranty forms. It was Van Eaton and

Scanlon who used them. Scanlon knew that Van Eaton had previously completed and signed one guaranty contract form and "that we cannot get credit unless we have one more director sign." The acts of Scanlon in pluralizing the "I's" and "my" to "we" and "our" on the forms, was his personal use thereof and any uncertainty concerning the party or parties to whom these pronouns referred should be construed most strongly against Scanlon. In view of Scanlon's knowledge of the previously executed guaranty and the necessity for an additional one, it is more likely the inserted plural pronouns referred to Scanlon and Van Eaton rather than to a neuter gender pronoun which would be employed in referring to a corporation.

With caution and with a firm belief that the judgment below was wrong in finding in favor of defendants Van Eaton and Scanlon [ *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc 1976)], the judgment in favor of plaintiff and against Taco is affirmed but the judgment is also reversed and the cause remanded with directions to enter judgment in favor of plaintiff and against defendants Van Eaton and Scanlon.

All concur.