### SALVATORE GAROFALO ET AL. *v.* ANGELO SQUILLANTE ET AL.
### (AC 19241)

Lavery, C. J., and Foti and Landau, Js.

Argued June 6—officially released November 14, 2000

*James H. Throwe*, with whom, on the brief, was *Helen M. Kemp*, for the appellants (plaintiffs).

*Charles D. Houlihan, Jr.*, for the appellee (named defendant).

*Opinion*

LAVERY, C. J. The plaintiffs[1] appeal from the judgment of the trial court rendered in favor of the named defendant, Angelo Squillante,[2] on his counterclaim to collect an unpaid balance of a debt evidenced by a promissory note. The plaintiffs claim that the court

---

[1] The plaintiffs are Salvatore Garofalo and Jacqueline Garofalo.

[2] The defendants at trial were Michael Botticello, Sanitary Services Corporation and Angelo Squillante. Only Angelo Squillante is a party to this appeal. In this opinion, we refer to the defendant Angelo Squillante as the defendant.

improperly (1) concluded that the defendant's claim was not barred by the statute of limitations and (2) made certain findings of fact relating to the payment of the debt. We reverse the judgment of the trial court.

The trial court found the following facts, which are relevant to this appeal. "In 1978, General Sanitation, a company owned by Nunzio [Squillante] and Angelo Squillante, sold certain assets to S & R Sanitation, a company owned by Salvatore [Garofalo] and Jacqueline Garofalo. The debt was secured with a promissory note in the amount of $145,914.12, with General Sanitation and the Connecticut Bank and Trust Company (CBT) named as payees. CBT was a joint payee under the 1978 note as a security device for indebtedness owed by General Sanitation. CBT released its interest in the 1978 note in February, 1983, leaving General Sanitation as the sole payee. Since General Sanitation ceased operations after the 1978 sale, payments on the 1978 debt were made by the Garofalos to Angelo [Squillante] and/or Nunzio Squillante. It is undisputed that the amount remaining on the 1978 note on January 31, 1983, after CBT was paid, was $80,869.60.

"In 1983, S & R Sanitation sold its assets to several buyers. The Squillantes created Admiral Trucking, a new corporation, to acquire a portion of those assets. Admiral Trucking gave its promissory note dated February 1, 1983, in the amount of $770,664.62 [1983 note] for those assets. This note was guaranteed by Edward J. Halloran and Angelo Squillante.

"The 1978 note for $145,914.12 was owned by Angelo [Squillante] and Nunzio Squillante, as successors to General Sanitation. Since Halloran had an interest in Admiral Trucking but no interest in the 1978 note, it was not feasible to offset the two obligations. Halloran would have had his potential liabilities reduced by an asset of the Squillantes. To address these differing own-

ership interests, the remaining payments due under the 1978 note were to be held in escrow by the Garofalos.

"In 1987, the [1983 note] was amended to reflect a reduction in principal. By its terms, the amended note was to be paid in full by March 20, 1993.

"The 1978 note required monthly payments of $2310.56. Until CBT was paid for its debt in 1983, regular monthly payments were made by S & R Sanitation as reflected in the business records maintained before S & R [Sanitation] sold its assets. The parties agree that the remaining principal balance of the 1978 note was $80,869.60 as of January 31, 1983. The instant dispute concerns the payments made thereafter.

"With the sale of S & R Sanitation to Admiral Trucking resulting in the [1983 note], the Garofalos suspended payments to the Squillantes under the 1978 note. An interest bearing escrow account was opened by Salvatore Garofalo into which he was to deposit the $2310.56 monthly payments which were due the Squillantes under the 1978 note. This escrow account was to stand as collateral for the [1983 note] until the 1983 note was paid, that is, until March 20, 1993.

"As of May 7, 1985, with regular monthly deposits the Garofalos would have escrowed $60,074.56 (26 months at $2310.56). As of that date, the escrow account showed a balance of $10,338.16.

"On July 26, 1994, suit was brought by the Garofalos to collect the balance owed by the Squillantes on the [1983 note]. The instant counterclaim was filed in that action. A decision was rendered in the case in chief on October 16, 1995, in which the fact finder found $17,236.93 still due the Garofalos on the [1983 note]. That amount plus interest and costs were awarded the plaintiffs, Salvatore [Garofalo] and Jacqueline Garofalo.

Angelo Squillante now counterclaims for the balance due on the 1978 note."

On October 7, 1998, the trial court concluded that the plaintiffs owed the defendant the remaining balance on the 1978 note. Accordingly, it rendered judgment in favor of the defendant in the amount of $66,248.48, with unspecified amounts in interest and attorney's fees. On October 21, 1998, the plaintiffs filed a notice of intent to file an appeal. On January 11, 1999, after a hearing, the court ordered the plaintiffs to pay the defendant $49,400.18 in interest and $13,347.30 in attorney's fees. This appeal followed.

"As an appellate court, our review of trial court decisions is limited to determining whether their legal conclusions are legally and logically correct, supported by facts set out in the memorandum of decision." (Internal quotation marks omitted.) *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 605, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000). "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) Id., 606; see also *New England Rock Services, Inc.* v. *Empire Paving, Inc.*, 53 Conn. App. 771, 775, 731 A.2d 784, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999). "When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Powers* v. *Olson*, 252 Conn. 98, 105, 742 A.2d 799 (2000).

I

We first determine which is the appropriate statute of limitations that governs the defendant's claim.

General Statutes § 52-576 governs the statute of limitations under simple or implied contract actions and requires that all such actions be filed "within six years after the right of action accrues." General Statutes § 42a-3-118 (a) specifically discusses promissory notes and requires that an action to enforce a note payable at a definite time be commenced "within six years after the due date or dates stated in the note . . . ." Section 42a-3-118 was revised in 1991 to provide for this six year statute of limitations.

The Supreme Court stated in *Roberts* v. *Caton*, 224 Conn. 483, 619 A.2d 844 (1993), that "[a]lthough substantive legislation is not generally applied retroactively absent a clearly expressed legislative intent, legislation that affects only matters of procedure is presumed to [be] applicable to all actions, whether pending or not, in the absence of any expressed intention to the contrary. . . . Statutes of limitation are generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action . . . . Therefore, unless specifically tied to a statutory right of action or unless a contrary legislative intent is expressed, the statute of limitations in effect at the time an action is filed governs the timeliness of the claim." (Citations omitted; internal quotation marks omitted.) Id., 488–89. The action in the present case was brought in 1994. Because § 42a-3-118 (a) was in effect at the time this action was commenced, it governs in this case.[3] See *Miller* v. *Kirshner*, 225 Conn. 185, 203, 621 A.2d 1326 (1993).

## II

We next determine whether, as the plaintiffs contend, the statute of limitations contained in § 42a-3-118 (a)

[3] We note that even if we were to apply § 52-576 as the applicable statute of limitations, our result would not change, as § 52-576 contains the same time limit of six years.

bars the defendant's claim. We agree with the plaintiffs that it does.

Section 42a-3-118 (a) provides for a six year statute of limitations for the enforcement of promissory notes such as the one in the present case. The last payment on the 1978 note that is the subject of the defendant's counterclaim was due on December 25, 1985. This action was commenced on May 31, 1994, more than six years subsequent to that date.

The court concluded that the six year statute of limitations had not yet begun to run on the 1978 note as of the date of the commencement of this action. The court stated that until the 1983 note was paid in full, the defendant could not claim the payment of the remaining balance of the 1978 note, which served as collateral for the 1983 note. The court reasoned: "The [plaintiffs] contend that the six year statute of limitations, [General Statutes] § 52-576, started running on the 1978 note in February, 1983, when the last payment was claimed to have been paid or December 25, 1985, when the final payment was due. As to the December 25, 1985 due date, since the 1978 note stood as collateral against the payment of the [1983 note, the defendant] could make no claim for payment of the balance remaining on the 1978 note until the [1983 note] was paid in full. As of October 16, 1995, $17,236.93 was still found to be outstanding on the 1983 note. Accordingly, the [plaintiffs] cannot prevail on their first special defense premised on the statute of limitations claim."

"The statute of limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgement of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account." (Internal quotation marks omitted.) *Zaplosky* v. *Sacks*, 191 Conn. 194, 198, 464 A.2d 30 (1983). No such acknowledgement

exists here. The 1978 note was not referenced beyond the 1983 note and guaranty and emerged only as a live issue over ten years later.

The true test for determining the appropriate date when a statute of limitations begins to run is to "establish the time when the plaintiff first could have successfully maintained an action. That is, an action cannot be maintained until a right of action is complete and hence, the statute of limitations cannot run before that time." *Gaylord Hospital* v. *Massaro*, 5 Conn. App. 465, 467, 499 A.2d 1162 (1986). A guaranty is merely a species of contract. *Regency Savings Bank* v. *Westmark Partners*, 59 Conn. App. 160, 164, 756 A.2d 299 (2000), citing *AALCO Plumbing Supply Co.* v. *John L. Henson Plumbing Co.*, 464 S.W.2d 10, 12 (Mo. 1971). "In an action for breach of contract, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been inflicted." *Gaylord Hospital* v. *Massaro*, supra, 467.

We do not agree with the defendant's contention that this action was premature until the 1983 note payments were satisfied. The defendant could first maintain this action, at the latest, on December 25, 1985, when the 1978 note was due in full, but remained unpaid. At that time, the escrow account should have contained all moneys due on the 1978 note, and it did not. Indeed, the defendant may have been able to maintain an action well before this date, as the plaintiffs suspended payments in 1983.

This is not an action to obtain collateral stated in the 1983 note. Rather, this is an action on the 1978 note itself. The 1978 note was not modified by the 1983 agreement. All that changed was that the payments on the 1978 note were to be placed in escrow. The collateral contract did not excuse payment on the note in any fashion.

Next, we must consider whether, as the defendant claims, the statute of limitations was tolled or delayed in some manner. A review of the relevant documents in this case leads us to conclude that the statute of limitations was not tolled. The original promissory note, dated December 27, 1978, requires eighty-four consecutive monthly payments of $2310.56 each until the note is paid in full. The promissory note for $770,664.62, dated February 1, 1983, was guaranteed by the defendant. This 1983 note states that any property held by the defendant may be treated as collateral for the guaranty and specifically references the 1978 note.[4] The 1983 note and guaranty were amended by an amended promissory note dated May 20, 1987.[5]

In reviewing these documents, we glean no indication that the payments arising from the 1978 note were excused, delayed or modified in any fashion. There was nothing in any of the above writings that stated that the payments on the 1978 note were to be suspended. The plain reading of the guaranty reveals that the 1978 note was just one of the many possible assets covered under the broad blanket of available collateral to secure payment of the 1983 note. The only difference between the 1978 note and the myriad of other assets designated as collateral is that the 1978 note is mentioned with specificity. Simply put, the 1978 payments were to be made monthly and placed into an escrow account and held until the later 1983 note for $770,664.62 was paid in full.

---

[4] The guaranty states in relevant part: "Any deposits, securities or other property of the undersigned which at any time are within your possession or control may be held and treated as collateral security for the payment of the liabilities, and you shall have a lien thereon and right to set off the same against matured liabilities or against any other sums due hereunder, including, but not limited to, payments due the undersigned under a promissory note from you to the undersigned in the original principal amount of $145,914.72 and dated December 27, [1978]."

[5] The purpose of the amended note was to reflect a substantial reduction in principal caused by payment by another debtor.

The 1978 note payments were held in escrow, presumably gaining interest that could have offset the action on the 1983 note. The 1978 note payments merely served as collateral on the 1983 note, and this action is based on the 1978 note, not on obtaining collateral as a security for the 1983 note. Accordingly, the statute of limitations was not tolled and expired before this action was commenced.[6]

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiffs on the named defendant's counterclaim.

In this opinion FOTI, J., concurred.

LANDAU, J., concurring. Although I agree with the majority's result, I concur in the opinion because I do not think that we need to reach the issue raised in part I of the majority opinion and to do so renders a portion of this opinion advisory.

A review of the procedural history of this case is necessary to support my position. In response to the defendant's counterclaim, the plaintiffs raised the special defense that the counterclaim was time barred by merely alleging that the "counterclaimant's claims are barred by the applicable statute of limitations." The plaintiffs did not identify by number the statute on which they were basing their special defense.[1] During trial and in their trial brief, the plaintiffs claimed that the defendant's counterclaim was barred by General Statutes § 52-576.[2] Consequently, the court considered only § 52-576 in rendering its decision.

---

[6] Accordingly, because we find that the applicable statute of limitations has expired in this case and the plaintiffs are therefore not liable for the unpaid payments on the 1978 note, we need not consider the plaintiffs' challenges to the trial court's findings of fact.

[1] Practice Book § 10-3 (a) provides: "When any claim made in a . . . special defense . . . is grounded on a statute, the statute shall be specifically identified by its number."

[2] Counsel who signed the trial brief was the same counsel who argued before this court.

In their brief to this court, the plaintiffs again based their statute of limitations argument on § 52-576. When the plaintiffs' counsel argued before this court, he asserted General Statutes § 42a-3-118 as a defense for the first time. We unwittingly[3] then gave the parties an opportunity to file supplemental briefs to address which statute applied to the 1978 note. Ordinarily, this court does not address questions not raised in the trial court. "We have stated repeatedly that we ordinarily will not review an issue that has not been properly raised before the trial court. See, e.g., *Santopietro* v. *New Haven*, 239 Conn. 207, 219–20, 682 A.2d 106 (1996) (court 'not required to consider any claim that was not properly preserved in the trial court'); *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (court declined to consider issues briefed on appeal but not raised at trial); see also Practice Book § 60-5 ('court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial')." *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 485, 754 A.2d 128 (2000). I do not believe we should address § 42a-3-118 because it was not before the trial court.

The determinative issue in this case, however, is not whether § 52-576 or § 42a-3-118 applies. Both sections impose a six year limitation on claims. The decisive issue in this case is when the 1978 note was due and the defendant's claim accrued. For this reason, therefore, I do not think that it is necessary to determine which statute of limitations applies to resolve the appeal.[4]

Consequently, I concur in the result.

[3] Prior to oral argument, this court only sees the record and the parties' briefs. The plaintiffs' brief was not written by the attorney who argued the case, which created confusion.

[4] This case provides yet another example of the difficulties that arise when counsel fail to follow the directives of Practice Book § 10-3. The problem raised here does not fall entirely on the plaintiffs' shoulders for the defendant may have waived his right to know the statute on which the plaintiffs intended to rely by failing to file a request to revise the special defense

seeking a more definite statement or to bring the matter to our attention at oral argument. See *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.,* 203 Conn. 123, 132, 523 A.2d 1266 (1987); *Carnese* v. *Middleton,* 27 Conn. App. 530, 537, 608 A.2d 700 (1992). Because both statutes have a six year limit, neither party is adversely affected. Under a different circumstance, however, it could have been detrimental to one of them.