[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 512 RE: MOTION TO STRIKE (#109)
 Facts
The plaintiffs, Benchmark Investments LLC and Benchmark Mystic LLC, filed the substitute complaint[1] in the present action on July 30, 2001. In count one, the plaintiffs allege the following facts. Benchmark Investments, as tenant, entered into a lease with the defendant, the Elms at Mystic LLC (the Elms), as landlord. Benchmark Investments subsequently transferred all of its rights, title and interest in the property to Benchmark Mystic. The Elms had a right under the lease to require Benchmark Mystic to purchase the property. The Elms subsequently exercised the right and Benchmark Mystic purchased the property for $1,600,000. The original lease agreement contained a representation by the Elms that "[a]ll of the documents, writings and other matters delivered by landlord to tenant in connection with the Property are true, correct and complete in all respects." Among the documents delivered to Benchmark Investments by the Elms in connection with the property was an asbestos inspection report which failed to identify certain areas of the property in which asbestos was located, and which also indicated the absence of asbestos in an area that did in fact contain asbestos. The plaintiffs have expended substantial amounts of money to address the asbestos problem on the property. The plaintiffs allege that by delivering an inaccurate asbestos report, the Elms breached its agreement with the plaintiffs.
In count two, the plaintiffs repeat the allegations of count one and further allege that the parties' agreement was made in the course and scope of trade or commerce and that the failure to provide an accurate asbestos report constitutes a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.
In count three, the plaintiffs repeat the allegations of count one and further allege the following facts. The defendant Guy Maiorano was the sole owner and member of the Elms. All assets of the Elms, other than certain funds held pursuant to a certain "Escrow Agreement,"[2] have been liquidated and distributed to Maiorano. The distribution occurred after Benchmark Investments' claim against the Elms arose. The funds held pursuant to the "Escrow Agreement" are insufficient to satisfy the plaintiffs' claims. The plaintiffs allege that the transfer of the Elms' assets to Maiorano violated the Uniform Fraudulent Transfer Act (UFTA), General Statutes §§ 52-552a through 52-552l, in that: (a) the transfer was made to Maiorano with the actual intent to hinders delay or defraud the defendants; (b) the Elms made the transfer without receiving a CT Page 513 reasonably equivalent value in exchange, at a time when the Elms reasonably believed that it would incur debts beyond its ability to pay; and (c) the Elms made the transfer to Maiorano without receiving equivalent value in exchange and became insolvent as a result of the transfer.
In count four, the plaintiffs repeat the allegations of count three and further allege that the Elms was at all relevant times a limited liability company, and that Benchmark Investments is entitled to enforce its claim against the Elms or Maiorano pursuant to General Statutes § 34-214.[3]
The plaintiffs' prayer for relief consists of four subparagraphs seeking money damages, attorney's fees, interest and costs, respectively.
On August 23, 2001, the defendants filed a motion to strike counts two, three and four of the complaint for failure to state a cause of action, and to strike paragraphs two (attorney's fees) and three (interest) of the prayer for relief on the ground that "they fail to set forth the required basis for the relief" More specifically, the defendants move to strike count two on the grounds that: (1) an action under CUTPA does not exist for a simple breach of contract; (2) an action under CUTPA does not exist for a single act; and (3) the plaintiffs fail to set forth facts to support allegations of immoral, unethical or unscrupulous behavior. The defendants move to strike count three on the ground that "it fails to allege any facts to support the reciting of the statute in the count." The defendants move to strike count four on the ground that "it only applies to dissolved LLC's and there are no facts alleged to support that position." The defendants move to strike the two subparagraphs of the prayer for relief on the ground that the plaintiffs have failed to set forth the statutory basis for each. The defendants' motion is accompanied by a memorandum of law. The plaintiffs filed a memorandum of law in opposition on September 27, 2001.
 Discussion
"Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or any one or more counts thereof, to state a claim upon which relief can be granted, or (2) the legal sufficiency of any prayer for relief in any such complaint, counterclaim or cross complaint, . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 10-39(a). "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a CT Page 514 motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "Practice Book . . . § 10-39, allows for a claim for relief to be stricken only if the relief sought could not be legally awarded." Pamela B. v. Ment,244 Conn. 296, 325, 709 A.2d 1089 (1998). "A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." Doe v.Marselle, 38 Conn. App. 360, 364, 660 A.2d 871 (1995), rev'd. on other grounds, 236 Conn. 845, 675 A.2d 835 (1996).
 Count Two
The defendants argue that count two of the substitute complaint fails to state a claim under CUTPA because the plaintiffs have alleged only a single act amounting to nothing more than a simple breach of contract, and have not alleged any unscrupulous, immoral, unethical or oppressive behavior. The plaintiffs argue that they have pleaded facts amounting to misrepresentation, and therefore have stated a valid claim under CUTPA. The plaintiffs also argue that a single transaction is sufficient to constitute a CUTPA violation.
CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. General Statutes § 42-110b (a). "The split of authority within the courts of this state on the issue as to whether a single act may constitute a CUTPA violation does not require citation. This jurist, however, believes that the better reasoned opinions are those that agree that the legislature's use of the plural `acts or practices' in General Statutes § 42-110b, instead of the singular, has significance as to what may constitute a CUTPA violation." Medeiros v.Federal Paper Board, Superior Court, judicial district of New London at New London, Docket No. 536477 (July 2, 1996, Hurley, J.) (17 Conn.L.Rptr. 310, 312). This court has therefore repeatedly concluded that the allegation of a single act is insufficient to state a claim for violation of CUTPA. See Hightower v. Walgreen Eastern Co., Superior Court, judicial district of New London at New London, Docket No. 553554 (August 15, 2000, Hurley, J.T.R.); Medeiros v.Federal Paper Board, supra, 17 Conn.L.Rptr. 312; Spakowski v.Charter Oak Walk-in Medical Center, P.C., Superior Court, judicial district of New London at New London, Docket No. 528137 (June 2, 1994,Hurley, J.) (9 C.S.C.R. 683, 684). The court sees no reason to depart from its previous holdings on this issue. The motion to strike is granted as to count two because the plaintiffs have CT Page 515 alleged only a single act by the defendants.
 Count Three
The defendants move to strike count three on the ground that "it fails to allege any facts to support the reciting of the statute in the count." In their memorandum of law, the defendants admit that the allegations of the third count "at first blush . . . may seem to be a fraudulent transfer. . . ." The defendants assert, however, that a fraudulent transfer did not actually take place, and they support this assertion by reciting numerous facts not alleged in the complaint. To the extent that the defendants' motion relies on facts not contained in the complaint, it is an impermissible "speaking" motion to strike. See Doe v. Marselle, supra, 38 Conn. App. 364. The court will not consider the unpleaded facts recited in the defendants' memorandum of law.
The defendants also argue that count three sets forth no facts supporting a cause of action under the Uniform Fraudulent Transfer Act (UFTA), General Statutes §§ 52-552a through 52-552l. The plaintiffs argue that they have stated valid claims under several theories of liability set forth in General Statutes §§ 52-552e and 52-552f.
General Statutes § 52-552e (a) provides in relevant part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." General Statutes § 52-552f (a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."
As stated above, the plaintiffs have alleged in count three that after Benchmark Investments' claim against the Elms arose, the Elms transferred assets to Maiorano with the actual intent to hinder, delay or defraud the defendants. The plaintiffs argue that these facts constitute a valid claim under § 52-552e (a)(1). That section, however, covers transfers made "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor. . . ." (Emphasis added.) General Statutes § CT Page 51652-552e (a)(1). In their memorandum of law, the plaintiffs state that "in order to sustain a valid claim pursuant to the UFTA, the plaintiffs must allege that the debtor (the Elms) made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor (Benchmark Investments and Benchmark Mystic)." This statement suggests that the plaintiffs meant to allege an intent to hinder, delay or defraud the plaintiffs but mistakenly used the words "the defendants" instead. Nevertheless, the court is limited to the facts alleged in the complaint. Count three contains no allegation that the defendants (The Elms or Maiorano) are creditors of the Elms. The plaintiffs have therefore failed to state a legally sufficient claim under § 52-552e
(a)(1).
The plaintiffs have also alleged in count three that the Elms made the transfer to Maiorano without receiving a reasonably equivalent value in exchange, at a time when the Elms reasonably believed that it would incur debts beyond its ability to pay. This allegation, along with the allegation that the transfer occurred after Benchmark Investments' claim against the Elms arose, is sufficient to state a claim under § 52-552e
(a)(2)(B). Moreover, the plaintiffs have further alleged that the Elms became insolvent as a result of the transfer. The plaintiffs have therefore also stated a claim under § 52-552f (a).
Because the plaintiffs have alleged sufficient facts to state a claim under both § 52-552e (a)(2)(B) and § 52-552f (a), the motion to strike is denied as to count three.
 Count Four
The defendants next argue that count four does not state a valid claim under General Statutes § 34-214.[4] That section authorizes claims against a dissolved limited liability company or its members under certain circumstances. Count four contains no allegation that the Elms has been dissolved, and instead states that "[t]he Elms was at all relevant times a Connecticut limited liability company." In their memorandum of law, the plaintiffs state that they "agree that a prerequisite to any claim pursuant to [§ 34-214] is that the defendant limited liability company be dissolved." The plaintiffs nevertheless conclude, without any authority or analysis, that the motion to strike should be denied. The court disagrees with the plaintiffs. Because the plaintiffs have admitted that an essential element is missing from their claim under § 34-214, the motion to strike is granted as to count four.
 Prayer for Relief
CT Page 517
Finally, the defendants argue that subparagraphs two and three, seeking attorney's fees and interest, respectively, should be stricken. With regard to subparagraph two, the defendants argue that there is no statutory or contractual basis for attorney's fees in the present case. The plaintiffs' sole argument in support of an award of attorney's fees is that they are authorized under their CUTPA claim in count two. The court's granting of the motion to strike with regard to count two therefore removes any basis for an award of attorney's fees. The motion to strike is granted as to subparagraph two of the prayer for relief.
With regard to subparagraph three, the defendants' sole argument is that the subparagraph should be stricken for failing to cite any statutory authority for the payment of interest.[5] The plaintiffs argue that the motion to strike should be denied because prejudgment interest is authorized by General Statutes § 37-3a.
Practice Book § 10-3(a) provides: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." "Our Supreme Court has repeatedly stated; however, that § 10-3 (a) is merely directory and not mandatory. . . . We have excused noncompliance with § 10-3 (a) where the record discloses that neither the opposing party nor the trial court [was] confused or misled as to the statutory basis of the party's claim." (Citations omitted.)Skakel v. Benedict, 54 Conn. App. 663, 684, 738 A.2d 170 (1999). In the present case, the defendants do not claim that they have been confused or misled by the plaintiffs' failure to cite the statute under which they claim to be entitled to interest.
Moreover, the proper pleading to challenge the plaintiffs' failure to cite the statute upon which they rely would have been a request to revise, not a motion to strike. Freshnex v. Mount Vernon Strategies,Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 437778 (January 19, 2001, Devlin, J.); Norwest Mortgage v. Edwards, Superior Court, judicial district of Ansonia-Milford, Docket No. 057496 (May 4, 1998, Curran, S.T.R.) (22 Conn.L.Rptr. 123, 125); see alsoGarofalo v. Squillante, 60 Conn. App. 687, 697-98 n. 4, 760 A.2d 1271
(2000) (Landau, J., concurring) ("the defendant may have waived his right to know the statute on which the plaintiffs intended to rely by failing to file a request to revise"), cert. denied, 255 Conn. 929, 767 A.2d 101
(2001). For these reasons, the motion to strike is denied as to subparagraph three of the prayer for relief.
 Conclusion
For the reasons stated above, the defendants' motion to strike the CT Page 518 plaintiffs' substitute complaint is granted as to counts two and four and subparagraph two of the prayer for relief. The motion to strike is denied as to count three and subparagraph three of the prayer for relief.
D. Michael Hurley, Judge Trial Referee